## JOHN B. STRYKER *vs.* PETER VANDERBILT.

1. Fraud in the consideration of the contract cannot be set up as a defence in a court of law to an action upon a sealed instrument.

2. The time for the performance of a contract, either by deed or by parol, may be enlarged by parol.

3. If, at a public sale, the owner fraudulently represents to a bidder, that others are bidding, and thereby induces him to raise his bid, the owner cannot enforce the sale and recover the purchase price.—Per ELMER, J.

On demurrer to pleas.

Lawrence V. Stryker, of the county of Somerset, died intestate. The administrator of his estate, Stephen Stryker, died leaving the estate unsettled.

John B. Stryker, the administrator of Stephen Stry

ker's estate, became also the administrator of the estate of Lawrence V. Stryker, left unadministered by Stephen Stryker, deceased.

It being shown to the Orphans Court that the personal estate of said Lawrence V. Stryker was insufficient to pay his debts, an order was made directing the said John B. Stryker to sell certain real estate of which said Lawrence V. Stryker died seized.    In pursuance of said order, said real estate was sold at a public sale, and bid off, by Peter Vanderbilt, at $44.75 per acre, subject to a mortgage encumbrance of $2400, which was to be assumed by the purchaser, as a part of the purchase money.    The said Vanderbilt signed a certificate under seal, by which he covenanted and agreed to pay the purchase money by a time therein named, and receive his deed, according to the conditions of sale.

The sale was confirmed by the Orphans Court; but the purchaser failed to pay the money, and receive his deed, according to his agreement.

The Orphans Court ordered the property to be resold.

On the second sale, the land sold for $279.32 less than on the first.    To recover this sum, and also to recover the interest on the purchase money, agreed to be paid by Vanderbilt, from the time he agreed to pay it to the time the purchase money on the second sale was paid (amounting to about $600), John B. Stryker brought an action of covenant on the said sealed certificate.

The defendant pleaded several pleas—the second, fourth, fifth and sixth of which were as follows:

Second plea.    And for a further plea in this behalf, as to the said breach of covenant above assigned by leave, &c., the said defendant says, that the plaintiff ought not, &c., because, he says, that the said certificate in the said declaration mentioned was obtained from the said defendant by the plaintiff, and others with him, by fraud, covin, and misrepresentation; that is to say, that the said plaintiff

and the crier of the said sale, in the said certificate mentioned, falsely and fraudulently represented and pretended to the defendant, at the said sale, that some other person was in good faith bidding at said sale of said property against the defendant, and thereby falsely and fraudulently induced the defendant to increase and multiply his bids by several, to wit, five bids, from the sum of forty dollars per acre, to the sum of forty-four dollars and seventy-five cents per acre for said farm ; whereas the defendant in fact says, that there was no *bona fide* bidder against the defendant at said sale, who bid more than forty dollars per acre for said property ; and so, the defendant says, that confiding in the said representation of the plaintiff and of the said crier, and supposing the fictitious and false bids of the said crier to be real, the defendant was led to raise his bids on said property, from forty dollars per acre to forty-four dollars and seventy-five cents per acre, and that said defendant was thus fraudulently led to sign his name to the said certificate, wherefore the said defendant says, that the said sale and the said certificate were and are both void in law, and this he, the said defendant, is ready to verify: whereupon he prays judgment if the plaintiff ought to have and maintain his aforesaid action thereof against him.

Fourth plea.   And for a further plea in this behalf, as to the breach of covenant above assigned by like leave, &c., the said defendant says, that the plaintiff ought not, &c., because protesting that said declaration and the matters therein contained are not sufficient in law, &c., and to which the defendant is not obliged, nor by the law of the land bound to make an answer; nevertheless, for plea in this behalf, the defendant says, that it was stipulated by the plaintiff, in the said conditions of sale in the said declaration of the plaintiff mentioned and set forth, among other things, that there was then, to wit, on the tenth day of March, in the year 1853, a subsisting lien on

the said premises sold, as the plaintiff hath in his said declaration set forth, to the defendant amounting to the sum of $2400 by bond and mortgage, and that the said lien by the said bond and mortgage might and would remain on said premises, so that the purchaser would be required to pay, on securing the proper deed for the said premises, only the balance of the purchase money, after deducting the said sum of $2400, the amount alleged to be due on said bond and mortgage, according to the tenor and effect of the said condition of sale and of the covenant of the defendant as aforesaid; and that it was further publicly announced by the plaintiff, at said sale, in the presence of the bidders and of the defendant, as part of said condition, that the said lien by said bond and mortgage belonged to, and was held by one James Bishop; and the defendant avers, that afterwards, to wit, on the first day of May, A. D. 1853, in Somerset aforesaid, the plaintiff met the defendant, in pursuance of the said conditions of sale, and demanded of him the sum of $3849.78, as the balance claimed to be due him from the defendant on the said sale of the premises aforesaid, and represented that the sum of $2400, above mentioned, being the residue of the total amount of the purchase money or price of said farm and premises, was the precise amount of the encumbrance by bond. and mortgage there and then being on said farm and premises, and that the same would remain thereon, according to the tenor and effect of the said condition of sale; and further, that the plaintiff then and there offered to give to the defendant, upon the defendant paying the plaintiff the sum of $3849.78, a certain paper, which the plaintiff called a deed for said farm; and the defendant further avers, that instead of the facts being as they were represented by the plaintiff, both when signing the said conditions of sale, on the tenth day of March, in the year last aforesaid, and also when demanding the said sum of money last aforesaid, to wit, on the first day of

May, A. D. 1853, in this behalf, there were three several
bonds and mortgages held by three different individuals,
to wit, one by James Bishop, one by George Hulse, and
one by Henry D. Johnson, bearing different dates, and
amounting in the aggregate, with interest due thereon, to
a larger sum than was stipulated and represented by the
plaintiff in the said condition of sale, to wit, to the sum
of $2800; and the defendant avers, that the said several
persons holding the said several bonds and mortgages, to
wit, on the first day of May, A. D. 1853, were unwilling
to allow their said mortgages to remain any longer on
said premises as a lien, but that they severally demanded
payment of the sums of money secured by lien on said
farm as aforesaid immediately thereafter, and that they
severally notified the defendant, to wit, on the day and
year last aforesaid, in Somerset aforesaid, that they would
proceed to foreclose their said several mortgages on said
farm immediately thereafter, unless the money should be
paid to them, severally, according to the tenor and effect
of the same, of which the plaintiff had notice, to wit, on
the day and year last aforesaid, in the county aforesaid,
wherefore the defendant says, that although he was ready
and willing to comply with the said conditions of sale,
and to keep his covenant with the plaintiff in all things
whereof the plaintiff hath above complained against : in
according to the true intent, tenor, and effect of the said
conditions of sale and of the said certificate, yet the plain-
tiff hath failed to keep his part of the said conditions of
sale, and hath failed to make good and true the stipula-
tions and agreements by him made to the defendant in
the said conditions of sale aforesaid, and which were con-
ditions precedent to the defendant's said covenant, and
by reason whereof the defendant was not bound to pay
the amount of $3849.98 to the plaintiff, demanded as
aforesaid, to wit, on the day and year last aforesaid, while
the said several mortgages were still remaining a lien on

said farm, amounting to the sum of $2800, while immediate payment thereof was demanded by the several holders of the same, and this he, the said defendant, is ready to verify ; wherefore he prays judgment if the said plaintiff ought to have or maintain his aforesaid action thereof against him.

Fifth plea. And for a further plea in this behalf, as to the said breach of covenant above assigned by like leave, &c., the said defendant says, that the plaintiff ought not, &c., because he says, that although the plaintiff did, on the second day of May, A. D. 1853, in the office of the plaintiff, in the township of Montgomery, in the county of Somerset aforesaid, offer to the defendant to deliver to him the said deed for the said farm and premises, and demanded of the defendant the sum of $3849.98, as in the declaration of the plaintiff is set forth, yet the defendant avers, that the plaintiff then and there refused to allow the defendant to submit the same deed to any person learned in the law for inspection, so that the defendant could be assured that the said deed was a good and sufficient deed, and according to the tenor and effect of the said conditions of sale, although the defendant requested the plaintiff to allow him and his counsel to inspect said deed upon accepting the same, to wit, on the day and year last aforesaid ; and the defendant further avers, that the defendant, at the same time and place last aforesaid, requested the plaintiff to exhibit to him some evidence that the said Orphans Court had approved of the said sale according to the said conditions of sale in the said declaration of the plaintiff set forth, but that the plaintiff then and there refused to show to the defendant any certificate or proof whatever that the said sale had been approved by said court, by reason whereof the defendant was prevented from complying with said conditions of sale, and from keeping and performing his part of the covenant by him to be kept and performed, and this he is ready to verify ;

wherefore he prays judgment if the plaintiff ought to have, &c., maintain his aforesaid action thereof against him.

Sixth plea. And for a further plea in this behalf, as to the said breach of covenant above assigned by like leave, &c., the defendant says, that the plaintiff ought not, &c , because, he says, that heretofore, to wit, on the second day of May, A. D. 1853, at the office of the plaintiff, in the township of Montgomery, in the county aforesaid, before the said conditions of sale and the alleged covenant were performed, and while the same were in force, the said defendant and the said plaintiff, for divers good reasons and considerations then thereto moving, and especially that some more accurate and satisfactory arrangement would . be made by the plaintiff respecting the encumbrance of mortgages on said farm, mentioned in the said conditions of sale, then and there mutually agreed to enlarge and extend the time of complying with said conditions of sale, in the plaintiff's declaration set forth, from the day last aforesaid until, to wit, the 28th day of the same month, and then and there mutually agreed to postpone, and then and there did postpone, the execution of the said sale and purchase of the said farm and premises until the said 20th day of May aforesaid, and did then and there agree that the said conditions of sale and the said certificate should continue in force, and be equally binding on both parties thereto, until the day last aforesaid, as fully as the same were binding, to wit, on the second day of May aforesaid ; and the defendant avers that, confiding in the good faith and promise of the plaintiff as aforesaid, in pursuance of the said condition of sale and of the said subsequent agreement to enlarge the time of complying with said conditions, to wit, on the said 20th day of May last aforesaid, the defendant went to the office of the plaintiff, in the township of Montgomery aforesaid, in the county aforesaid, and tendered himself to the plain-

tiff ready to comply with said conditions of sale, and to accept of a good and sufficient deed from the plaintiff, and to pay him the sum of money required by the terms of the said conditions of sale and the certificate of the defendant aforesaid to be paid, and to do all things which he, the defendant, was bound to do in the premises, according to the true intent and meaning, tenor and effect, of the said conditions of sale, and of the said certificate of the defendant thereon, and then and there requested the plaintiff to do his part of the said agreement, and to deliver to him a good and sufficient deed for the said farm and premises, in conformity with the said conditions of sale, &c. And the defendant avers that the plaintiff then and there wholly refused to deliver such deed to the defendant, and wholly failed to keep and perform his part of the said agreement of sale ; but, on the contrary, the defendant avers that the plaintiff, disregarding his said promise, to wit, on the 13th day of May, in the year last aforesaid, applied to the Orphans Court of the said county of Somerset to have the sale revoked and set aside, and that the said court did, on the day and year last aforesaid, set aside and revoke the said sale, in pursuance of said application of the plaintiff, so that, by reason of the conduct of the plaintiff and of the action of the said Orphans Court, the defendant was disabled and prevented from keeping his said covenant with the plaintiff, and the plaintiff had disabled himself from conveying any title of said farm to the defendant ; and this he, the defendant, is ready to verify ; wherefore he prays judgment if the plaintiff ought to have or maintain his aforesaid action thereof against him.

To which pleas the plaintiff filed the following demurrers :

And the said plaintiff, as administrator as aforesaid, as to the said pleas of the said defendant, by him secondly, fourthly, fifthly, and sixthly above pleaded, saith, that the

same and the matters therein contained, in manner and form as the same are above pleaded and set forth, are not sufficient in law to bar or preclude him the said plaintiff, from having or maintaining his aforesaid action thereof against him, the said defendant, and that the said plaintiff is not bound by law to answer the same, and this he, the said plaintiff, is ready to verify; wherefore, for want of sufficient pleas in this behalf in the said plaintiff, as administrator as aforesaid, prays judgment and his damages by him sustained on occasion of the breach of covenant in the said declaration mentioned to be adjudged to him, &c.

And the said plaintiff, according to the form of the statute in such case made and provided, states and shows to the court here the following causes of demurrer, that is to say: to the said plea by the said defendant fourthly above pleaded, that the said plea is double, and contains a two-fold answer to the said declaration, in this, to wit, that the said defendant hath thereby pleaded and alleged, that it was stipulated in the condition of sale set forth in the plaintiff's declaration, that there was a lien upon the said premises amounting to $2400 only, whereas in fact the said lien amounted to a larger sum, to wit, the sum of $2800; and also, that the said defendant hath thereby pleaded and alleged that it was publicly announced at the said sale by the plaintiff, in presence of the bidders, that the said lien by bond and mortgage belonged to, and was held by one James Bishop, whereas in fact there were three several bonds and mortgages held by three different individuals, to wit, James Bishop, George Hulse and Henry D. Johnson; and also, that it was stipulated by the said conditions of sale that the same lien of $2400 might remain a lien on the premises, and the purchaser pay only the balance of the purchase money; whereas, in fact, the said mortgagees were not willing that the said sums of money should remain a lien upon the said pre-

mises, and insisted upon payment thereof, and also that the said plea is evasive, argumentative, and in other respects multifarious and defective.

And the said plaintiff, according to the form of the statute in such case made and provided, states and shows to the court here the following causes of demurrer to the said plea by the defendant fifthly above pleaded, that is to say, that the said plea is double, and contains a two-fold answer to the said declaration in this, to wit, that the said defendant hath thereby pleaded and alleged, that although the plaintiff offered to the defendant, on the said 2d day of May, A. D. 1853, upon receiving payment of the purchase money, a deed for the said premises, yet that the plaintiff refused to allow the defendant to examine the said deed or to submit the same to any person learned in the law for inspection; and also, that the plaintiff, though requested by the defendant, refused to exhibit any proof that the said Orphans Court had opposed the said sale; and also, that the said last mentioned plea is in other respects multifarious and defective.

Argued November term, 1855, before the CHIEF JUSTICE, and ELMER, POTTS, and HAINES, Justices, by *G. H. Brown*, in support of demurrer, and *Hageman* contra.

*Brown* cited 3 *Chitty's Pl.* 963, (5*th Am. ed.*); 6 *Munf.* 364; 13 *Johns. R.* 430, *Dorr.* v. *Munsell*; 3 *T. R.* 440, *Hayne* v. *Maltby*; 2 *Johns. R.* 177, *Vrooman* v. *Phelps*; 1 *Zab.* 18, *Rogers* v. *Colt*; 1 *Zab.* 713 (same case); 3 *Bing. N. C.* 928, *Stowell* v. *Robinson*; 5 *Scott* 196; 5 *Ad. & El.* 61, *Harvey* v. *Graham*; *Smith on Con.* 20; 2 *Man. & Gr.* 729, *West* v. *Blakeway*; 2 *Wils.* 376, *Rogers.* v. *Payne*; 2 *Man. & Gr.* 459; 16 *Wend.* 532; 1 *Wash.* 170, *Baird* v. *Blairgrove*; 2 *Wend.* 587, *Langworthy* v. *Smith*; 15 *Johns R.* 200, *Hasbrouck* v. *Tappen*; 9 *Wend.* 68, *Blood* v. *Goodrich*; 13 *Wend.* 71, *Delacroix* v. *Bulkley*; *Sugden on Vendors* 87, (*old ed.*)

*Hagerman* cited *Arch. Civ. Pl.* 195 ; 1 *Chitty's Pl.* 499, 505.; 4 *M. & S.* 338 ; 12 *J. R.* 430 ; *Coxe* 178, *Armstrong* v. *Hall ;* 1 *South.* 148, 361 ; 6 *Halst.* 110, *Barrow* v. *Bispham ;* 10 *Serg. & R.* 25 ; 2 *Kent's Com.* 464 ; 23 *Wend.* 260, *Sanford* v. *Handy ;* 2 *Parsons on Con.* 280 ; 2 *Bouvier's L, Dict.* "*Puffer*"; *Chit. on Con.* 298 ; 3 *Bing.* 368 ; 6 *T. R.* 644 ; 8 *Ib.* 93 ; 2 *Kent's Com.* 537, 539 ; 1 *Parsons on Con.* 417, 418 (*note c.*); *Dart on Vendors* 89 ; 8 *How. U. S. R.* 134, *Veasie* v. *Williams ;* 16 *Penn. St. R.* 200, *Stains* v. *Shore ;* 1 *Brown's R.* 346, *Dona'dson* v. *McRoy ;* 14 *Penn. St. R.* 446 ; *Saxton* 274, 280 ; *Saxton* 321, *Rodman* v. *Zilley*; 3 *Green's Ch.* 141, *Van Houten* v. *McCarty ;* 1 *Zab.* 597, *Oliver* v. *Phelps ;* 4 *Zab.* 140, *Hogencamp* v. *Ackerman ;* 2 *Greenl. Ev.* § 235 ; 1 *Greenl. Ev.* § 304 ; *Dart* 451 (*note* 2) ; 4 *Zab.* 333 ; 1 *Harr.* 274.

The CHIEF JUSTICE. The demurrer to the second plea raises the long agitated question, whether fraud in the consideration of a deed is a good defence at law. The question is not whether a court of common law has jurisdiction over questions of fraud, or power to relieve against it. That is conceded. The difficulty grows out of the familiar principle, that a seal imports a consideration ; and where the contract is in itself legal, the amount or value of the consideration cannot be inquired into in a court of law : and inasmuch as an averment of fraud in the consideration of the contract necessarily involves an inquiry into the consideration upon which the deed is founded, that defence cannot be set up without a violation of well settled principle.

"In contracts under seal," says Chancellor Kent, "a consideration is necessarily implied in the solemnity of the instrument, and fraud in relation to the consideration is held to be no defence at law, though fraud in relation to the execution of the specialty, and going to render it void, is a good defence." 2 *Kent's Com.* 464.

In *Armstrong* v. *Hall*, *Coxe* 181, Mr. Justice Chetwood, after stating that the reason given for admitting the plea in *Collins* v. *Blanturn*, (2 *Wills*, 347) was that the bond was void *ab initio*, adds, "But where the obligation has been executed upon a contract, which the parties might legally enter into, but it afterwards appears that they were induced by deceit or fraudulent misrepresentation, that the bond is void of itself, or that the party shall be permitted to set up a parol agreement *dehors* the bond, and thus go into the consideration of the instrument in a court of common law, is a doctrine which, I think, is not warranted by any legal authority; and if it had been correct and agreeable to law, I cannot believe that the books would not have contained a case to support it. The proper remedy for the defendant in this case appears to me to be, to apply to a court of chancery, or the more easy and less expensive remedy, by an action on the case in the nature of a deceit."

In New York it has been uniformly held, in a long succession of cases, that fraud in the consideration of a sealed instrument, the contract itself being one which the parties might legally enter into, cannot be inquired into in a court of law. *Vrooman* v. *Phelps*, 2 *Johns R.* 177; *Dorr* v. *Munsell*, 13 *Johns. R.* 430; *Franchot* v. *Leach*, 5 *Cow.* 506; *Champion* v. *White*, 5 *Cow.* 509; *Dale* v. *Roosevelt*, 9 *Cow.* 307; *Belden* v. *Davies*, 2 *Hall's S. C. Rep.* 433.

The statement of Mr. Justice Chetwood, that no ancient case can be found, where the consideration of a sealed instrument has been inquired into in a court of law, on the ground of fraud in the consideration, seems to be well founded; yet there are certainly modern authorities which maintain that doctrine.

Many of the cases will be found cited in 3 *Cowen's Ph. on Ev.* 1448, *note* 969. Mr. Justice Cowen, after citing authorities in South Carolina, which hold the defence admissible at law, adds, " This doctrine, however, seems

entirely anomolous. With respect to other states, it may be laid down as a general rule, and we believe will be found sustained by all the cases, that, independent of any statutory provision, no fraud whatever can be set up in a court of law to affect the operation of a sealed instrument, save such as relates to the execution."

In this state, some of the earlier cases hold the defence to be admissible.

In *Barrow* v. *Bispham*, 6 *Halst.* 117, Mr. Justice Ford rested the practice adopted in that case upon the equitable control of the court over its judgments ; and in Pennsylvania, though the defence is admitted at law, it is considered as a mere equitable defence, permitted to prevent a failure of justice, there being no court of equity in that state. *Stubb's Adm'r* v. *King*, 14 *Serg. & R.* 208.

In *Rogers* v. *Colt*, 1 *Zab.* 19, this court held that executed contracts under seal, where the party has received the benefit of his agreement, cannot be disaffirmed at law on the ground of fraudulent misrepresentations. This case was affirmed in the Court of Appeals, on the broad ground, that in an action on a sealed instrument, no fraud can be set up in a court of common law as a defence to the action, except such as relates to the execution of the instrument. And in the susbsequent case of *Staats* v. *Freeman*, the defence was overruled at the circuit, and the party compelled to resort to equity for relief.

No great principle is involved in the question. The controversy relates merely to the tribunal in which the party defrauded shall have relief. The principle, that fraud vitiates a contract, is admitted. But in attempting to administer relief in a court of law, another well settled principle is encountered, *viz.* that a seal imports a consideration, which cannot be gainsaid at law. The only inquiry is, whether the latter principle shall be abandoned, or the party complaining be required to go into equity for relief. It is important that the question should be at rest. I

apprehend no evil result from adhering to the rule adopted by the Court of Appeals, and am accordingly of opinion that the plea should be overruled.

The fourth and fifth pleas are bad for duplicity. They severally set up two distinct matters, each of which requires a separate answer, and each of which, if it constitute any defence whatever, would bar the action. 1 *Chit. Pl.* 564.

The sixth plea is, that the time for the performance of the covenant was enlarged by parol agreement of the parties, and that the defendant was ready, and offered to perform the covenant on his part, at the time thus designated for performance.

In *Chit. on Con.* (*9th ed.*) 105, the rule is stated to be, that in the case of a specialty, a subsequent agreement not under seal, dispensing with or varying the time or mode of performing an act covenanted to be done, cannot be pleaded in bar to an action on the specialty for nonperformance of the act in the manner prescribed." This statement is in accordance with the ancient maxim of the law, " *unum quodque ligamen dissolvitur eo ligamine quo ligatur.*" *Rogers* v. *Payne,* 2 *Wils.* 376 ; *West* v. *Blakeway* 2 *Man. & Gr.* 729.

The weight of authority, however is, that a parol agreement, enlarging the time for performing a contract under seal, may avail as an excuse for nonperformance at the day specified in the original agreement. *Fleming* v. *Gilbert,* 3 *Johns. R.* 528 ; *Longworthy* v. *Smith,* 2 *Wend.* 587 ; *Mead* v. *Degolyer,* 16 *Wend.* 632 ; 3 *Cowen's Ph. on Ev.* 1479, *note* 987.

In *Cox* v. *Bennet,* 1 *Green* 165, it was held, that the time fixed for the payment of money due on bond might be extended by an agreement not under seal. And the Chief Justice, in delivering the opinion of the court, said, " the party to whom a condition or covenant is to be performed may, by acts as well as words, enlarge the time of

performance." There was no pretence that the bonds were avoided by the parol agreement.

It was suggested by counsel, upon the argument, with much apparent force, that this construction will entirely defeat the plaintiff's right of recovery. For the covenant being altered by subsequent parol agreement, no action of covenant will lie upon the written contract, but the plaintiff can maintain assumpsit only upon the parol agreement, and the parol agreement, being for the sale of land, will be void under the statute of frauds.

The answer to the objection is, that a subsequent parol agreement, not contradicting the terms of the original contract, but merely enlarging the time of execution, is good, even in the case of a contract required by the statute of frauds to be in writing. *Cuff* v. *Penn*, 1 *Maule & Sel.* 21; *Chit. on Con.* (1st *Am. ed.*) 27, (9th *Am. ed.*) 125, *note*; *Cummings* v. *Arnold*, 3 *Metc.* 486. A different doctrine is held in *Blood* v. *Goodrich*, 9 *Wend.* 68.

But, however this may be, it must be regarded as settled, that the time for the performance of a contract either by deed or by parol, may be enlarged by parol.

The demurrer to the sixth plea is overruled.

Justices POTTS and HAINES concurred.

ELMER, J., (dissenting). To a declaration in covenant, for not complying with the conditions of a sale of real estate, made by the plaintiff, the defendant has pleaded several pleas, which are demurred to. The second plea sets up fraud in procuring the covenant, by the fraud, covin, and misrepresentation of the plaintiff, and others with him, *viz.* that the plaintiff and the crier of the sale falsely and fraudulently represented and pretended to the defendant, at the said sale, that some other person was in good faith bidding at said sale against the defendant, and thereby falsely and fraudulently induced the defendant to increase his bids, from forty dollars per acre to

forty-four dollars and seventy-five cents per acre, whereas there was no *bona fide* bidder for more than forty dollars. It is objected to this plea that it is bad, upon the ground that, in an action at law on a speciality, it is not competent for the defendant to avoid it by pleading that it was obtained by fraudulent misrepresentations ; and the case of *Rogers* v. *Colt*, 1 *Zab.* 18 and 704, is relied on as in point.

In the opinion of Judge Carpenter, in this court, the law is so stated, and the Chief Justice, in delivering the opinion of the Court of Errors, would seem to have concurred in his statement. The case itself, however, does not establish the broad proposition now contended for. The consideration for the defendant's covenant in that case, according to the construction of the contract adopted by the court, was the assignment to him of the interest the plaintiff had in a certain house and lot standing in the name of a third person, for which the defendant agreed to pay the sum sued for. As the plaintiff had executed his part of the contract, and equities were involved which a court of law could not enforce, the facts set up as evidence of fraud, if they tended to prove fraud at all, were not of such a character as would render the contract on the defendent's part absolutely void, but, at most, voidable on terms, and the decision was clearly right on that ground. The broad doctrine held by the New York courts in the cases of *Vrooman* v. *Phelps*, 2 *Johns.* 177 ; *Dorr* v. *Munsel'*, 13 *Johns.* 430 ; *Dale* v. *Roosevelt*, 9 *Cow.* 307, and in other cases, cannot, in my opinion, be sustained, either upon principle or authority. The point directly decided in *Rogers* v. *Colt*, is undoubtedly to be respected by this court as established law, while the mere *obiter dicta* of the most respectable judges, if they appear to be incautiously made, may be disregarded. That actual fraud and deceit in the consideration which induced the execution of a sealed instrument, where the circumstances of the case are such that the party

sought to be charged has no equity to set up on his part, and the fraud is of such a character as ought, in justice, to exonerate the defendant entirely, may be shown as well in a court of law as in a court of equity, is, in my opinion, the true doctrine.

It was formerly held by this court, that parol evidence of false and fraudulent representations, used in obtaining a specialty, could be given under the general issue, and would be sufficient to defeat the action.     *Armstrong* v. *Hall*, *Coxe's R.* 178; *Mason* v. *Evans*, *Ibid* 182; *Curtis* v. *Hall*, 1 *South.* 148, 361.     The correctness of the decision in *Armstrong* v. *Hall*, as to the propriety of admitting the evidence under the plea of *nil debet*, may be well questioned; but that actual fraud might properly have been pleaded in avoidance of the sealed bill, I see no reason to doubt.     Mr. Justice Chetwood, who dissented from the opinion of the majority, put his opinion, like the New York courts, upon the ground, that a bond or other sealed instrument, once executed, is of so solemn a nature that it cannot afterwards be avoided by anything less solemn, and that as it imports a good consideration, courts of law are not at liberty to enter into any inquiry as to what the consideration was.     Properly understood, these undoubtedly were, and I suppose still are, the well established doctrines of the common law, and I have no disposition to impugn them.     But do these doctrines, when properly applied, prevent a court of law from holding a sealed instrument to be void when procured by fraud, either in the inducements presented for entering into it, or in the actual circumstances attending the sealing and delivery?     That fraud of the last mentioned description may be shown, all admit. That duress, infancy, and coverture may be pleaded, as showing that if the party had not the capacity to contract, it was always a nullity, is undeniable.     In the case of *Collins* v. *Blantern*, 2 *Wils.* 347, these doctrines were urged as precluding the court from inquiring

into the legality of the consideration of a bond, but the court held shat illegality in the consideration may be shown, and that a bond given for an illegal consideration is void. Chief Justice Wilmot, in answering the objection, that the law will not endure a fact in *pais*, *dehors* a specialty to be averred against it, and that if there be no consideration for a bond, it is a gift, says, "the present condition is for the payment of a sum of money; but that payment to be made, was grounded upon a vicious consideration, which is not inconsistent with the condition of the bond, but strikes at the contract itself, in such manner as shows that in truth the bond never had any legal entity." This case has been strangely considered as deciding that fraud in the consideration could not be pleaded. There is nothing, however, in the opinion to that effect, and its principle, it seems to me, is directly the other way. Fraud in the consideration strikes at the contract itself, and shows that in truth the instrument, however solemnly sealed, never had any legal entity, just as truly as illegality, unless we are bound to hold fraud to be legal. That there was no adequate consideration, or that the intended consideration in fact failed, are very different from fraud, and do not, as that does, show that the sealed instrument was never valid. In this latter sense, the consideration of a specialty cannot be inquired into at law. If there was no consideration, a bond fairly executed is a gift; if the consideration fails, the bond still remains, and relief can only be administered in equity.

That actual designed fraud does, by the common law, vitiate and render void from the beginning every contract and every deed contaminated by it, may be considered an elementary principle. It is found in every treatise and in numerous cases, most of which are collected in the opinion of Judge Betts, in the case of *Day* v. *N. E. Car Company*, October 1854, reported in 3 *Liv. L. Mag.* 44. Ch. Just. Savage, in the case of *Stevens* v. *Judson*, 4 *Wend.* 473, while

he holds himself bound by the prior decisions before re-ferred to, says he can see no very good reason for them. Chief Justice Shaw, in the case of *Hazard* v. *Irwin*, 18 *Pick.* 95, shows very satisfactorily that the New York courts were mistaken. Some of the courts in other states follow the New York decisions, while others hold the law to be the other way.

The plea, that a specialty was obtained by fraudulent misrepresentations, is contained in 2 *Chit. Pl.* 464, and appears to be constantly used in Westminster hall. *Mallalieu* v. *Hodson*, 5 *Eng. L. & E. R.* 279; *Horton* v. *Westminster Im. Com.* 14 *Eng. L. & E. R.* 379; *Evans* v. *Edmonds*, 24 *Eng. L. & E.R.* 228; *S. C.* 76 *Eng. Com. L. R.* 775. The questions raised in these cases were, whether the fraudulent representations pleaded were such as had the effect of rendering the sealed instrument void. In the last case, the plea alleged, that a covenant to pay a certain yearly sum, upon which the suit was brought, was obtained by fraudulently misrepresenting to the defendant, that his wife was chaste and virtuous, whereas she was not so, and thereby he was induced to enter into the deed, and it was held a good defence.

In the case of *Den* v. *Wright*, 2 *Halst.* 175, it was held by this court, upon the broad ground that fraud vitiates all deed and contracts, that an executor or other trustee cannot directly or indirectly purchase land at his own sale, and that a deed made in pursuance of such a sale was void, and passed no title to the grantee. Afterwards, in the case of *Den* v. *McKnight*, 6 *Halst.* 392, Chief Justice Ewing said, the expression that such sales were void was too strong; they were voidable by the heirs only; strangers could not impeach them. And in the case of *Den.* v. *Hammel*, 3 *Harr.* 74, the court adhere to the doctrine, that such a deed may be avoided by the heirs in an action of eject-ment. Probably these cases went too far; not because fraud cannot be set up at law in avoidance of a deed, but

because, where the consideration money has been received by the grantor, such a deed is only voidable upon terms, and as a court of law cannot arrange the terms, the case ought to be left to a court of equity. Upon this ground, the Court of Errors, in the case of *Mulford* v. *Bowen*, 4 *Halst. C. R.* 751, decided that where the heirs brought ejectment to recover possession of land so sold, the administrator who had purchased through a third person, at his own sale, might, by a bill in chancery, enjoin them from proceeding at law, and have the equities settled in that court. In the case of *Den* v. *Newark Ind. Rub. Co.*, 4 *Zab.*, this court held, a deed, made by administrators who bound themselves to convey certain real estate at an agreed price, and it was set up and sold accordingly, and the sale approved by the Orphans Court, not to be void at law, so that the heirs could maintain an ejectment against the purchasers, who had paid the consideration money.

With every disposition to abstain from any encroachment on the appropriate jurisdiction of the Court of Chancery, I am clear that the true doctrine of the common law is, that whenever fraudulent misrepresentations have induced a party to execute a specialty with due formality, and are of such a nature that in justice they render the contract absolutely void, which it belongs to the court to decide when they are presented, and no equities have arisen on the other side, the fraud may be set up at law. A person who is fraudulently entrapped into the execution of a specialty, no matter at what stage of the proceeding the fraud was committed, is no more a free agent, and ought to be no more bound by his deed than one who has been constrained by duress. The deed is in neither case his deed. Such a fraud can be dealt with as well in a court of law as in a court of equity. That species of fraud which, under some circumstances, is a matter of inference, growing out of peculiar relations and

duties, is different; for the most part, it can only be reme-
died in a court of equity

It remains to inquire whether the fraudulent misrepre-
sentations set up in this plea are of such a character as
ought to avoid the covenant. This was not denied on the
argument. Whether a sale at auction may be avoided by
the purchaser, because by-bidders or puffers were employed
by the seller, has been much questioned, and the point
cannot be considered as entirely settled. The weight of
authority would seem to be in favor of allowing the seller,
without notice, to employ a person to bid for him, if he
does this with no intention to defraud and with no other
purpose than to prevent a sacrifice of the property under
a given price. 1 *Par. Con.* 418, *and notes.* And see
*Kearney* v. *Taylor*, 15 *How. U. S.* 494; *Towle* v. *Leavitt*,
3 *Fost. N. H.* 360; *Flint* v. *Woodin*, 13 *Eng. L. & E. R.*
278. In *Veasie* v. *Williams*, 8 *How. U. S.* 134, a majority
of the Supreme Court gave relief upon a bill in equity, so
far as to set aside the excess of price over the fair bids,
after the contract had been executed. Where the under-
bidding was designed to deceive and entrap, it ought, I
think, to avoid the contract, although it will often be diffi-
cult to draw the line between a fraudulent design and an
honest procedure. The mere crying of a fictitious bid by
the auctioneer, in the manner common at public sales, with-
out any interference with the bidders, or misrepresentations
to them, probably would not of itself be sufficient evidence
of fraud. The plea now in question avers that the plaintiff
falsely and fraudulently represented that others were bid-
ding, and if this is proved to the satisfaction of the court
and jury, such conduct ought to bar his recovery. In my
opinion, the plea is good, and the demurrer should be over-
ruled.

To the fourth plea there is a special demurrer. One of
the conditions of the sale, set forth in the declaration,
was that twenty-four hundred dollars, secured upon the

premises by bond and mortgage, might remain, and that the purchaser should pay the balance of the purchase money on a day and at a place named. The plea avers, with much particularity, that it was publicly announced at the sale, that the said lien on the premises belonged to one Bishop, and that on the day for paying the purchase money, plaintiff demanded the balance beyond the said sum of twenty-four hundred dollars, and represented that that sum might remain ; and also avers that, instead of there being twenty-four hundred dollars secured on the premises, there was a larger sum due to several persons who held mortgages, and who refused to allow the same to remain, but demanded their money, and threatened to enforce their claims. Besides the objection, that this plea is double and argumentative, it is, in my opinion, bad in substance. The statement in the conditions of sale made by an administrator, that twenty-four hundred dollars, secured on the premises, might remain, contains no reference to the holder or holders of the lien, and what the plaintiff said on the subject is no part of the contract. The meaning of this stipulation seems to be, that the purchaser would not be required to pay this sum to the seller, but it might remain, to be paid when due, or if due then, when demanded by the holder of the mortgage. Who held mortgages, the purchaser could ascertain from the public records. No fraud or deceit in this matter is alleged. That the sum was larger than the conditions stated, did no injury to the purchaser. He was not bound to take the property, and pay the balance beyond the sum named, until the encumbrances were reduced to the sum that was to remain.

The fifth plea avers, that although the plaintiff offered to deliver him a deed, and demanded the purchase money, as alleged in the declaration, he refused to allow defendant to examine said deed, and also refused to allow him to submit the same to any person learned in the law for

inspection, although defendant requested him to allow him and his counsel to inspect the same; and it further avers, that defendant requested plaintiff to exhibit evidence that the Orphans Court had approved the sale, which plaintiff refused. To this plea there is a special demurrer, and I think it is bad for duplicity. The pleas and demurrers were filed before the late practice act took effect. It is bad, also, in substance. As to the refusal to exhibit evidence of the approval of the Orphans Court, the defendant was virtually a party to that proceeding, and bound to take notice of it. As to the refusal to allow the defendant to examine the deed, I think the plea is bad for want of an averment that the defendant was ready and offered to perform the contract on his part. The acts of making a a deed and of paying the money were to be done at the same time, and were therefore dependant the one upon the other. The plaintiff was not bound to deliver a deed without the payment of the money, any more than the defendant was to pay his money without a deed. Before the defendant could claim a right to inspect the deed, he was bound to tender himself ready to perform his part of the contract; for if he did not intend to perform, whether the deed was correct or not, it was of no importance to him to know how the fact was. If issue is properly taken on the averment in the declaration, that the plaintiff tendered a deed, he must, of course, show that it was in proper form.

The sixth plea is, that before the said conditions were performed, and while the same were in force, viz. on the day fixed for the performance, the plaintiff and defendant mutually agreed to enlarge and extend the time of complying with the said conditions until a subsequent day, when defendant offered to perform, &c., but plaintiff refused. To this there was a general demurrer, and it was insisted that the case comes within the well established rule, that a contract under seal cannot be enlarged, altered,

or discharged by a parol contract. *Rogers* v. *Payne,* 2 *Wils.* 376 ; *Spencer* v. *Healy,* 20 *Eng. L. & E. R.* 337 ; *Harris* v. *Goodwin,* 2 *Man. & Gran.* 405 ; *West* v. *Blakeway, Ib.* 727 ; *Sibley* v. *Brown,* 4 *Pick.* 137. This rule does not apply to cases where both parties have acted under the new contract, nor does it apply to the case of a waiver of a condition. Cases referred to in *West* v. *Blakeway.* See, also, *Littler* v. *Holland,* 3 *T. R.* 590 ; *Cox* v. *Bennet,* 1 *Green* 166 ; *Vanhouten* v. *McCarty,* 3 *Green C. R.* 141 ; *Langworthy* v. *Smith,* 2 *Wend.* 587 ; *Lawrence* v. *Dole,* 11 *Verm.* 549 ; *Hotham* v. *East I. Co.,* 1 *T. R.,* 638 ; *Shinn* v. *Roberts, Spencer* 444.

Undoubtedly if the plaintiff prevented the defendant from paying the money, by agreeing to another day, that would be a waiver of the original condition, and a good defence. The conditions were dependant, the one upon the other, and the plaintiff could only entitle himself to a performance by the defendant, by an offer in due time to perform his part. This offer the plaintiff might have waived, and thus have discharged the defendant ; and in that case a new agreement, if made in writing so as to satisfy the statute of frauds, might have been binding, according to the new terms of it. Had the plea shown that the plaintiff did thus waive the original conditions, or had it shown that he, by his acts, prevented the defendant from performing, the plea would have been good. But, as pleaded, it only sets up the alteration or discharge of a contract under seal, by another not sealed. The facts stated may all be true, and yet the plaintiff may have offered to perform on his part, and requested the defendant to perform on his, as is averred in the declaration, and may, before or after doing this, without any waiver of the tender, have agreed that the defendant might pay at a subsequent day, which would not amount to a discharge of the covenant. Independent of the technical difficulty, such a promise was without consideration and not binding. In my opinion, the demurrer to this plea is well taken.

Cited *in Vanderbilt* v. *Stryker,* 3 *Dutch.* 7 ; *Garretson* v. *Kane,* 3 *Dutch.* 211 ; *Baker* v. *Baker,* 4 *Dutch.* 19 ; *Nightingale* v. *Meginnis,* 5 *Vr.* 465 ; *Mulford* v. *Peterson,* 6 *Vr.* 135 ; *Lord* v. *Brookfield,* 8 *Vr.* 553 ; *Leigh* v. *Clark,* 3 *Stock.* 112.